Chief Judge Desmond.
These are two habeas corpus proceedings, heard separately and dismissed after the hearings by two Special Term orders, both of which were unanimously affirmed by the Appellate Division on the same day. The appeal here is taken as of right from both orders on the assumption that a constitutional question is involved (Civ. Prac. Act, § 588, subd. 1, par. [a]). We may treat relator’s two habeas corpus petitions as if they were one pleading in which it is alleged that his confinement and restraint in a State mental hospital is violative of his constitutional and other rights in that no “ final order ” (see Mental Hygiene Law, § 74, subd. 7) has been made or entered, or, if there is such an order, in that it has been made without notice to relator. These are the only grounds alleged for habeas corpus and there is no mention in the petitions of relator’s present condition of mental health.
Since June 12,1959 relator has been a patient, first at Buffalo State Hospital and now at Rochester State Hospital. On that date he was committed as a mentally ill person, certified to be such by two physicians, by a County Court order made pursuant to section 74 of the Mental Hygiene Law after notice of application therefor had been served personally on relator and on his mother (see § 74, subd. 3). The County Court, as permitted by subdivision 4 of section 74, ordered that relator be committed to Buffalo State Hospital “ for observation and treatment for a period not exceeding 60 days.” Another paragraph of that “ Order of Certification ” incorporating subdivision 7 of section 74 directed that ‘ ‘ upon the filing of a certificate of the director or the physician in charge or the designated medical officer of the institution in the office of the County Clerk prior to the expiration of 60 days from the date of this order, that said alleged mentally ill person is in need of continued care and treatment, this order shall then become final.” “ Final ” means *365 (Mental Hygiene Law, § 46, sub cl. 7) that the “patient shall thereafter remain in such institution, or any other institution, to which he may be transferred, until his discharge ’ ’ pursuant to law.
On July 28, 1959, somewhat less than 60 days after the order of certification had been entered and relator received at the State hospital, a medical officer of the hospital, presumably designated for that purpose, filed in the Erie County Clerk’s office a subdivision 7 certificate stating that relator was in need of continued care and treatment. Relator received no notice of the filing of that paper. In October, 1959 he was transferred from the Buffalo institution to Rochester State Hospital where he is still a patient. In a return to one of the habeas corpus writs the Director of the Rochester hospital informed the court that relator ‘ ‘ is still in my custody, and is still mentally ill ’ ’.
To repeat, relator did not sue out these writs to get a discharge on the ground that he is not mentally ill, a procedure which is always open to him, in addition to the remedies set up by the Mental Hygiene Law (see Matter of Coates, 9 N Y 2d 242, 247, app. dsmd. 368 U. S. 34). Unlike petitioner Coates in the proceeding just cited, relator is not availing himself of the right given by section 76 of the Mental Hygiene Law. Section 76 describes a proceeding to set aside the section 74 proceedings of June, 1959, by obtaining “ a rehearing and a review of the proceedings already had and of such certification, upon a petition to a justice of the supreme court other than the justice making such certification, who shall cause a jury to be summoned * * * and shall try the question of the mental illness of the person so certified ”. Relator takes his stand on the single fact that he received no notice of the medical officer’s July 28, 1959 certification as a result of which his temporary status became permanent or “ final ”. He asserts that the lack of such notice for nearly three years has in actual effect and in theory of law deprived bim of his right to the review of the proceedings under which he was committed and pursuant to which he is still being restrained of his liberty. We, however, agree with the courts below. Relator has shown no violation of any right under the Federal or State Constitutions or under the Mental Hygiene Law as interpreted by us in Matter of Coates (9 N Y 2d 242, supra).
*366 Although the Coates opinion (supra) examines into the whole meaning and effect of sections 74 and 76 of the Mental Hygiene Law, the question directly posed by the Coates appeal was: “ Does section 76 provide for adequate notice to appellant that the 30-day period, in which she must make her demand for a jury trial, has commenced to run? ” We read section 76 to mean that the 30-day limitation period for demanding a review of a section 74 commitment does not begin to run until the patient has been served with notice of the 1 ‘ need for the continued care and treatment” (§ 74) certification. We held in Coates that due process requirements were satisfied by the statute as so read. Petitioner Coates got no notice of such certification, so her right to a review including a jury trial was still existent. The same is true of this relator but he prays the court not for such a review but for immediate release on a theory that his confinement, originally lawful, became unlawful for failure to notify him that by force of the Medical Director’s certificate of July 28, 1959, the order which in first effect sent him to the mental hospital for a 60-day (or less) period of observation and treatment had become final in the sense that it required that he remain in the hospital for an indefinite time until discharged. Consistently with the Coates decision, we hold that the absence of notice to relator of the July 28, 1959 Medical Director’s certification kept alive relator’s right to a section 76 review. But we hold, too, that absence of such notice had no effect on the validity, already established by the County Court order, of relator’s continued detention after and by reason of the Medical Director’s official certificate. The notice given to relator and to his mother of the original (June 12, 1959) application to the County Court was warning enough, constitutionally and under the statute, not only of the impending temporary commitment but that the temporary terms of the order would become final if and when the Medical Director should file a certificate that continued care and treatment were essential.
The orders should be affirmed, without costs.
Judges Dye, Fuld, Froessel, Vax Voorhis, Burke and Foster concur.
Orders affirmed.